Argued July 19, affirmed in part; remanded in
part for entry of conviction and sentence on
one charge, and dismissed of the other charge
September 4, 1979

# STATE OF OREGON,
*Respondent,*
*v.*
# GEORGE BARNETT, JR.,
*Appellant.*

(No. 78 3331, CA 12961)

600 P2d 877

Gary L. Hooper, Deputy Public Defender, Salem,
argued the cause for appellant. With him on the brief
was Gary D. Babcock, Public Defender, Salem.

[69]

W. Benny Won, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, Gillette and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Defendant appeals his convictions of promoting prostitution, ORS 167.012,[1] and attempted compelling prostitution, ORS 167.017,[2] for which he was sentenced after trial by the court to concurrent five-year terms of imprisonment. He assigns as error the trial court's refusal to appoint counsel for his defense, the trial court's entry of convictions and sentences on both the promoting prostitution and compelling prostitution counts, and the trial court's failure to specify a schedule for payments of costs. We remand in part.

The events leading to defendant's convictions spanned a period from late April to early May 1978. On April 22, 1978, the victim, who was 15 years old at the time, ran away from home and stayed at a friend's house. The next two days, the victim stayed in a motel room with two young men named Williams and Hairston and a girl named Lisa. During this period,

[1] ORS 167.012 provides:

"(1) A person commmits the crime of promoting prostitution if, with intent to promote prostitution, he knowingly:

"(a) Owns, controls, manages, supervises or otherwise maintains a place of prostitution or a prostitution enterprise; or

"(b) Induces or causes a person to engage in prostitution or to remain in a place of prostitution; or

"(c) Receives or agrees to receive money or other property, other than as a prostitute being compensated for personally rendered prostitution services, pursuant to an agreement or understanding that the money or other property is derived from a prostitution activity; or

"(d) Engages in any conduct that institutes, aids or facilitates an act or enterprise of prostitution.

"(2) Promoting prostitution is a Class C felony."

[2] ORS 167.017 provides:

"(1) A person commits the crime of compelling prostitution if he knowingly:

"(a) Uses force or intimidation to compel another to engage in prostitution; or

"(b) Induces or causes a person under 18 years of age to engage in prostitution; or

"(c) Induces or causes his spouse, child or stepchild to engage in prostitution..

"(2) Compelling prostitution is a Class B felony."

[71]

Williams and Hairston took the victim and Lisa to defendant's apartment, where defendant advised the four on aspects of prostitution. Prior to that time the victim had only met defendant briefly on one occasion. For the next three days, the group lived in Hairston's brother's apartment. On the third night, Williams and defendant entered the apartment and took the victim and Lisa to defendant's house where they spent to rest of the night. The next evening the victim, Lisa, Williams, and defendant went to the Eugene Hotel, where they spent approximately three days. During the stay at the hotel, the victim set up a date with a taxi driver with whom she was slightly acquainted, the purpose of which was for the victim to have sexual intercourse with the taxi driver in exchange for $45. The victim advised defendant of her plans, to which the defendant gave his approval. The victim then accompanied her date to breakfast and to his apartment, where the two had sexual intercourse, the man paying the agreed upon $45. Upon returning to the hotel, the victim gave $25 to defendant, informing him it was part of the money she had earned from her date.

During the time the victim associated with defendant, defendant developed a plan which he discussed on several occasions with the victim and Lisa. Defendant planned to take the girls to Seattle, Washington, where they would work as prostitutes under his direction and control. He was to receive and manage their earnings. Defendant told the girls that initially they would have to work on the streets, but that eventually they would earn enough money to obtain an apartment, from which they could operate a safer and more profitable enterprise. Defendant also planned for the victim to help recruit other women into the prostitution operation, but assured her that she would always be the "number one lady." He promised the girls extravagant cars, nice clothes, the opportunity to travel, and apartments in places such as Hawaii, California, and Florida. He frequently flattered the girls, telling them they had the potential

to be "stars." He told the girls that his relationship with them was not that of pimp and prostitute, but rather that he was a "man of leisure" and they were "ladies of pleasure." He told the girls that they would make him rich. Defendant also indicated to the victim that he could manage such an operation better than other men because of his experience. He supplied the victim with false identification showing a different name from the victim's and the age 20, so that if the victim were arrested she would be treated as an adult and defendant could bail her out.

After the stay at the Eugene Hotel, defendant took the victim and Lisa to Seattle, where they stayed the first night at a hotel. The next day, Lisa returned to Oregon, while defendant and the victim remained in Seattle. The victim and another woman attempted to engage in prostitution, but found no willing customers.

The victim soon decided she wanted to leave the prostitution business. In order to get out of her situation in Seattle, she told defendant that she wanted to return to Eugene to get more clothes, some money, and perhaps a car before going back to Seattle. Defendant agreed to this plan and accompanied the victim on the bus back to Eugene. Once in Eugene, the victim went home to her parents and subsequently cooperated with the police in obtaining evidence against defendant and arranging for his arrest.

■ We addressed the issues presented in defendant's first assignment of error in *State v. Barnett* (CA No. 14479), 41 Or App 797, 598 P2d 1301 (1979). This case presents no new facts of constitutional significance which would require us to consider the question anew.

In determining whether the trial court properly convicted and sentenced defendant for both promoting prostitution and attempted compelling prostitution, we must seek the intent of the legislature. *State v. Cloutier*, 286 Or 579, 596 P2d 1278 (1979.)

Defendant was indicted as follows:

"COUNT I

"The defendant * * * did unlawfully and knowingly induce and cause [the complainant], a person fifteen years of age, to engage in prostitution; * * *.

"COUNT II

"and as part of the same act and transaction as set forth in Count I herein, the defendant * * * did unlawfully and with the intent to promote prostitution, receive and agree to receive money and other property, other than as a prostitute being compensated for personally rendered prostitution services, pursuant to an agreement or understanding that the money and other property was derived from prostitution activity, and did engage in conduct that aided and facilitated an act and enterprise of prostitution; * * *."

Thus, Count I charged defendant with violating ORS 167.017(1) (b), and Count II charged violations of ORS 167.012(1)(c) and (1)(d).

The trial court found that defendant was guilty under both ORS 167.012(1)(c) and (1)(d). The court also found, however, that defendant did not induce or cause the victim to engage in prostitution, but rather that he attempted to induce her to engage in prostitution. In explaining its reasons for imposing concurrent sentences, the court stated, "this was one episode of attempting to recruit a young woman into a life of prostitution."

■ In the present case, the evidence that directly proves promoting prostitution is but a part of the larger body of evidence that proves attempted compelling prostitution. We find this case indistinguishable from *State v. Williams*, 40 Or App 227, 594 P2d 1281 (1979), where we held in a similar factual setting that "the legislature did not intend to carve out separate crimes in this type of situation." 40 Or App at 234. We conclude that the trial court erred in separately convicting defendant for both promoting prostitution

and attempted compelling prostitution. Since each offense carries the same maximum sentence, it is for the state to elect the charge on which defendant will be convicted and sentenced. *State v. Jackson*, 23 Or App 246, 541 P2d 1072 (1975).

■ Having failed to object at trial to the lack of a specific schedule for payment of costs, defendant may not raise that issue here. *State v. Keys*, 41 Or App 379, 597 P2d 1266 (1979)

Affirmed in part; remanded in part for entry of conviction and sentence on one charge, and dismissal of the other charge.